# EXHIBIT B

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
Cumberland _____ **County**

| For Prothonotary Use Only: |
|---|
| Docket No:<br>*12 -1707* |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Transfer from Another Jurisdiction
- ☐ Petition
- ☐ Declaration of Taking

Lead Plaintiff's Name:
Janet Costella

Lead Defendant's Name:
Center for Schools and Communities

**Are money damages requested?** ☒ Yes  ☐ No

Dollar Amount Requested:
(check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes  ☒ No

**Is this an *MDJ Appeal*?** ☐ Yes  ☒ No

Name of Plaintiff/Appellant's Attorney:  Geoffrey S. McInroy, Esquire

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**SECTION B**

**Nature of the Case:**  Place an "X" to the left of the **ONE** case category that most accurately describes your ***PRIMARY CASE.*** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☒ Other:
  *Disability Discrimination*

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
- _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
- _____
- ☐ Other: _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
- _____
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

FILED-OFFICE
OF THE PROTHONOTARY

2012 JUL 12  PM 1:03

CUMBERLAND COUNTY
PENNSYLVANIA

JANET COSTELLA
_____
                          **Plaintiff**

CENTER FOR SCHOOLS AND COMMUNITIES and
CENTRAL SUSQUEHANNA INTERMEDIATE UNIT
_____
                          **Defendant**

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
:
:
: NO. 1707                    20 12
:
:
: Civil Term

---

**NOTICE TO DEFEND**

       YOU HAVE BEEN SUED IN COURT.  IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY AN ATTORNEY AND FILLING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU.  YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGEMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF.  YOU MAY LOSE MONEY OR PEOPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

       YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO THE TELEPHONE OR THE OFFICE SET FORTH BELOW TO FIND WHERE YOU CAN GET LEGAL HELP.

**CUMBERLAND COUNTY BAR ASSOCIATION**
**32 SOUTH BEDFORD STREET**
**CARLISLE, PA 17013**
**1-800-990-9108**
**717-249-3166**

---

TRUE COPY FROM RECORD
In Testimony whereof, I here unto set my hand
and the seal of said Court at Carlisle, Pa.
This _12th_ day of _July_, 20 _12_
_Laura J. Campbell_ Prothonotary

In Cumberland County Court of Common Pleas
of Pennsylvania

| | | |
|---|---|---|
| JANET COSTELLA, | : | No. 12-1707 Civil Term |
| Plaintiff | : | |
| vs. | : | |
| | : | |
| CENTER FOR SCHOOLS AND | : | |
| COMMUNITIES and | : | |
| CENTRAL SUSQUEHANNA | : | |
| INTERMEDIATE UNIT | : | |
| Defendants | : | |

## COMPLAINT

AND NOW COMES, Plaintiff, Janet Costella, by and through her Counsel, Geoffrey S. McInroy, Esquire, and the law firm of Owens Barcavage & McInroy, LLC, and hereby files this Complaint alleging violations of the Pennsylvania Human Relations Act, 43 P.S. §951-963 (PHRA); the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. §12101, et. seq. (ADA); and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000(e), et. seq. (Title VII); arising out of the conditions in termination of her employment with Central Susquehanna Intermediate Unit, and avers as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction is appropriate in this Court as the subject unlawful discriminatory employment practices complained of occurred in Cumberland County, Pennsylvania.

2.     Venue is proper because all parties do business in this jurisdiction and the causes of action arose in Cumberland County, Pennsylvania.

3.     Plaintiff filed a Complaint with the PHRC alleging disability discrimination.  It was dually filed with the EEOC.

4.     A Notice of Right to Sue was issued by the EEOC on December 19, 2011.  (A copy is attached as Exhibit A).

## PARTIES

5.     Paragraphs 1 through 4 are incorporated herein by reference as if fully set forth at length.

6.     Plaintiff, Janet Costella, resides at 400 Big Mount Road, Thomasville, York County, PA 17364.

7.     Defendant, Center for Schools and Communities, is located at 275 Grandview Avenue, Suite 200, Camp Hill, Cumberland County, 17011.

8.     Defendant, Central Susquehanna Intermediate Unit, is located at P.O. Box 213 Lewisburg, Union County, PA 17837.

## FACTS

9.     On or about 2002, Plaintiff suffered from multiple chemical sensitivities.

10.    On or about March 20, 2006, Plaintiff was hired by Defendant Center for Schools and Communities in the position of administrative assistant.

11.    On or about April 20, 2006 (when Plaintiff was initially hired by Defendant Center for Schools and Communities), she notified the Manager at the Center for Schools and Communities, Darlene Dwyer, and Shelly Ritter, Human Resource Manager for the Central Susquehanna Intermediate Unit, of Plaintiff's physical impairment.

2

12.     Plaintiff's physical impairment causes her to have the following symptoms during an attack: including (but not limited to) instant asthmatic allergic reaction, loss of voice, breathing difficulty, choking, confusion, dizziness and/or blurred vision.

13.     It is expected that Plaintiff's disability will be lifelong.

14.     Plaintiff was, and is, able to perform the essential job functions with reasonable accommodation of working in an environment that is free of smoke, perfumes, scents, and chemicals, despite her diagnosis of multiple chemical sensitivities.

## COUNT 1

## AMERICANS WITH DISABILITIES ACT AS AGAINST DEFENDANT CENTRAL SUSQUEHANNA INTERMEDIATE UNIT

15.     Paragraphs 1 through 14 are incorporated herein by reference as if fully set forth at length.

16.     Defendant employees 50 or more employees, and is an "employer" under the ADA.

17.     On or about July 2004, the Plaintiff was diagnosed with sensitivities to chemicals consistent with Multiple Chemical Sensitivity.

18.     On or about April 2006, the Defendant Employer was requested to limit Plaintiff's exposure triggers in the work environment that exacerbated the Plaintiff's condition.

19.     On or about March, 2007 (and again around April and August 2009), the Defendant Employer requested and was provided written confirmation of the Plaintiff's need for accommodations.

3

20.     On or about March 2, 2007, and again April and August 2009, the Defendant Employer was requested to provide Plaintiff an air purifier with a carbon and HEPA filter in her workspace to reduce potential triggers.

21.     The Plaintiff was given accommodations in the form of a small air purifier, a mask to wear, a notice to employees to refrain from using perfume in the bathroom and discontinuing the office use of strong smelling glue.

22.     On or about February 6, 2009 Plaintiff wore the mask provided by her employer to go through smokers to get to the mailroom and she suffered an exacerbation of her chemical sensitivity and later discovered that the mask provided lacked filters.

23.     On or about March 24, 2009 a sprinkler malfunction at 27 Grandview Avenue, Camp Hill, PA 17011 required chemical cleanup.

24.     The Plaintiff suffered a severe exacerbation of her chemical sensitivity due to the chemicals used during the cleanup.

25.     Plaintiff was forced to file a Worker's Compensation claim.

26.     On or about May 4, 2009, the Plaintiff requested formalized written accommodations for her diagnosis of Multiple Chemical Sensitivity from her employer, who did not expeditiously respond until August 17, 2009..

27.     On or about August 17, 2009 the Defendant Employer  responded to Plaintiff's request for formalized written accommodations.

28.     The August 17, 2009 accommodations were woefully inadequate and failed to address the issues Plaintiff requested in her May 4, 2009 request for accommodations.

4

29.     Plaintiff consistently and repeatedly reminded the Defendants of her disability in oral and written form, and on or about August 21, 2009, Ritter submitted an "accommodation plan" to Plaintiff in response to her requests for formalized written accommodations.

30.     The "accommodation plan" was not followed (and/or enforced) and Ritter refused to make any amendments or communicate with Plaintiff about problems and/or issues with the plan and simply stated on September 18, 2009 that "The accommodation plan is final".

31.     Defendant refused to enforce the accommodations and instead just requested employees to refrain from using strongly scented products (failing to institute an enforcement policy limiting scents and chemical use or educating co-workers on Multiple Chemical Sensitivity (MCS)).

32.     Defendant refused to enforce a designated smoking area at least fifty feet away from the building and away from the back entrance of the building, preventing the possibility of a clean and toxic-free path to the second floor.

33. Defendant failed to work with the landlord to obtain the owner's permission or to negotiate an exception to the terms of the lease to move the smoking area of the front and back entrances 50 feet away from the doorways and building.

34.     Plaintiff was not notified by the Defendant when there was cleaning with chemicals or spraying of chemicals in the lobby and/or building.

35.     Defendant called 911 in September 2009 when Plaintiff had an allergic reaction, even after Plaintiff requested Defendant not to do so (and the physician confirmed to Defendant it wasn't necessary) and such a response was not one of the original accommodation requests.

36.     Defendant required Plaintiff to wear a mask to ostensibly avoid allergic reaction, but the mask lacked filters and failed to prevent an allergic reaction.

5

37.     Defendant singled out Plaintiff and subjected her to the ridicule and jokes of her co-workers about her disability.

38.     Defendant refused to allow Plaintiff a reasonable accommodation of her work schedule to a flexible work schedule to a time when her surroundings were least problematic, specifically during the 8am to 4 pm shift.

39.     Defendant also refused to allow Plaintiff to return to work and forced her on to FMLA due to their refusal to reasonably accommodate the Plaintiff and refusal to set up intermittent FMLA leave for Plaintiff as a reasonable accommodation.

40.     Defendant forced Plaintiff to use vacation time and/or unpaid leave whenever the Plaintiff was forced to avoid the workplace due to an allergic reaction to something in the workplace.

41.     Defendant penalized Plaintiff for work missed during forced leaves.

42.     Plaintiff signed the Accommodation Plan on February 16, 2010 and May 13, 2010, but was terminated on July 7, 2010.

43.     Defendant refused to hold open Plaintiff's job, offer an equivalent position, or reassign Plaintiff to a vacant position as a reasonable accommodation before terminating Plaintiff on July 7, 2010.

44.     As a direct and/or proximate result of the above described discriminatory conduct of the Central Susquehanna Intermediate Unit, Ms. Costella suffered professional injuries, including but not limited to her professional reputation, professional development, loss of benefits (including back and front pay), loss of increase in salary, loss of potential promotions, compensatory damages from emotional pain and suffering, inconvenience, mental anguish, loss

6

of enjoyment of life, aggravation of condition, as well as punitive damages, costs and attorney

fees.

## COUNT 2

## AMERICANS WITH DISABILITIES ACT AS AGAINST DEFENDANT THE CENTER

## FOR SCHOOLS AND COMMUNITIES

45.     Paragraphs 1 through 44 are incorporated herein by reference as if fully set forth

at length.

46.     On March, 20, 2006, Plaintiff was hired by Defendant, The Center For Schools

And Communities.

47.     On or about April 20, 2006, Plaintiff informed Defendant, The Center For

Schools And Communities of her diagnosis of chemical sensitivities.

48.     Plaintiff's physical impairment causes her to have the following symptoms during

an attack: including (but not limited to) instant asthmatic allergic reaction, loss of voice,

breathing difficulty, choking, confusion, dizziness and/or blurred vision.

49.     The Plaintiff was (and is) able to perform the essential job functions with

reasonable accommodation of working in an environment that is free of smoke, perfumes, scents,

and chemicals..

50.     The Plaintiff asked that reasonable accommodations should be made to make a

safe work environment for Plaintiff so she could work without having contact with the

aforementioned triggers.

51.     On or about August 21, 2009 the Defendant, The Center For Schools and

Communities formulated an "Accommodation Plan" in response to Plaintiff's requests for an

accommodation.

7

52.     The Center For Schools and Communities refused to enforce the accommodations by just requesting employees to refrain from using strongly scented products and not instituting an enforcement policy limiting scents and chemical use or educating co-workers on Multiple Chemical Sensitivity.

53.     The Center For Schools and Communities refused to enforce a designated smoking area at least fifty feet away from the building and more specifically at least fifty feet from the front and back entrances to the building.

54.     The Center For Schools and Communities refused to communicate as a part of an ongoing interactive process regarding the "Accommodation Plan" and modify the same as recommended by the Defendant's doctors.

55.     The Center For Schools and Communities refused to relocate Plaintiff to a low traffic area or to an office work-space in an area that would not exacerbate Plaintiff's chemical sensitivities.

56.     The Center For Schools and Communities has failed to notify the Plaintiff (consistent with the Accommodation Plan) in advance when there was cleaning with chemicals or spraying in or around the building.

57.     The Center For Schools and Communities feigned accommodation by providing a mask and placing signs stating "fragrances free area", but never urged its staff to take the "accommodations" seriously and the result was further isolation of the Plaintiff and mocking of her disability.

58.     Defendant forced Plaintiff to use vacation time and/or unpaid leave whenever the Plaintiff was forced to avoid the workplace due to an allergic reaction to something in the workplace.

8

59.     None of the accommodations recommended by her physicians or in the

Accommodation Plan imposed an undue burden on The Center For Schools And Communities.

60.     As a direct and/or proximate result of the above described discriminatory conduct

of the Center for Schools and Communities, Ms. Costella suffered professional injuries,

including but not limited to her professional reputation, professional development, loss of

benefits (including back and front pay), loss of increase in salary, loss of potential promotions,

compensatory damages from emotional pain and suffering, inconvenience, mental anguish, loss

of enjoyment of life, aggravation of condition, as well as punitive damages, costs and attorney

fees.

## COUNT 3

## THE CENTER FOR SCHOOLS AND COMMUNITY"S VIOLATION OF THE

## PENNSYLVANIA HUMAN RELATIONS ACT

## 43 P.S. § 951, ET SEQ.

61.     Paragraphs 1 through 60 are incorporated by reference as though fully set forth

herein.

62.     Ms. Costella was an employee of the Center for Schools and Communities as the

term is defined by the PHRA.

63.     The Center for Schools and Communities employs  four or more persons within

the Commonwealth of Pennsylvania and is an employer as defined by the Pennsylvania Human

Relations Act (PHRA).

64.     Ms. Costella was (and continues to be) qualified to perform the essential duties of her position with the Center for Schools and Communities, with or without reasonable accommodations.

65.     Ms. Costella is a qualified individual with a disability in that Ms. Costella suffers from a disability (Multiple Chemical Sensitivity or "MCS"), and The Center for Schools and Communities was aware of her disability and saw Ms. Costella as she suffered from her disability.

66.     The Center for Schools and Communities discriminated against Ms. Costella based upon her disability or perceived disability by: (a) failing to preserve confidentiality with respect to her disability and accommodations, (b) failing to uniformly apply its policies, (c) failing to afford Ms. Costella reasonable accommodations, (d) failing to follow or modify its own Accommodation Plan as it had promised to do, (e) subjecting Ms. Costella to termination and/or the equivalent of termination, and (f) subjecting Ms. Costella to ridicule and embarrassment from her co-workers.

67.     Ms. Costella's disability was not job related.

68.     The Center for Schools and Communities permitted and allowed the discriminatory behavior of its employees and supervisors against Ms. Costella.

69.     Ms. Costella was discriminated against on the basis of her disability and in violation of the PHRA.

70.     The Center for Schools and Communities should have known that its failure to enact a policy for enforcement of accommodations thereby subjected Ms. Costella to discrimination based upon her disability.

10

71.     As a direct and proximate result of the above described discriminatory actions by The Center for Schools and Communities, Ms. Costella suffered physical injury, and financial injury including but not limited to loss of past earning (including back and front pay), future loss of earnings, loss of earnings potential, and loss of benefits.

72.     As a direct and/or proximate result of the above described discriminatory conduct of The Center for Schools and Communities, Ms. Costella suffered professional injuries, including but not limited to her professional reputation, professional development, loss of benefits, loss of increase in salary, and loss of potential promotions, compensatory damages from emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, aggravation of condition, entitling her to damages, punitive damages and attorney fees.

## COUNT 4

## CENTRAL SUSUEHANNA INTERMEDIATE UNIT'S

## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

## 43 P.S. § 951, ET SEQ.

73.     Paragraphs 1 through 72 are incorporated by reference as though fully set forth herein.

74.     Ms. Costella was an employee of the Central Susquehanna Intermediate Unit as the term is defined by the PHRA.

75.     Central Susquehanna Intermediate Unit employs four or more persons within the Commonwealth of Pennsylvania and is an employer as defined by the Pennsylvania Human Relations Act (PHRA).

11

76.     Ms. Costella was (and continues to be) qualified to perform the essential duties of her position with the Central Susquehanna Intermediate Unit, with or without reasonable accommodations.

77.     Ms. Costella is a qualified individual with a disability in that Ms. Costella suffers from a disability (Multiple Chemical Sensitivity or "MCS"), and Central Susquehanna Intermediate Unit was aware of her disability and saw Ms. Costella as she suffered from her disability.

78.     Central Susquehanna Intermediate Unit discriminated against Ms. Costella based upon her disability or perceived disability by: (a) failing to preserve confidentiality with respect to her disability and accommodation, (b) failing to uniformly apply its policies, (c) failing to afford Ms. Costella reasonable accommodation, (d) failing to follow or modify its own Accommodation Plan as it had promised to do, (e) subjecting Ms. Costella to termination and/or the equivalent of termination, and (f) subjecting Ms. Costella to ridicule and embarrassment from her co-workers.

79.     Ms. Costella's disability was not job related.

80.     Central Susquehanna Intermediate Unit permitted and allowed the discriminatory behavior of its employees and supervisors against Ms. Costella.

81.     Ms. Costella was discriminated against on the basis of her disability and in violation of the PHRA.

82.     Central Susquehanna Intermediate Unit should have known that it was not applying its policies properly thereby subjecting Ms. Costella to discrimination based upon her disability.

12

83.     As a direct and proximate result of the above described discriminatory actions by
Central Susquehanna Intermediate Unit, Ms. Costella suffered physical injury, and financial
injury including but not limited to loss of past earning, future loss of earnings, loss of earnings
potential, and loss of benefits.

84.     As a direct and/or proximate result of the above described discriminatory conduct
of Central Susquehanna Intermediate Unit, Ms. Costella suffered professional injuries, including
but not limited to her professional reputation, professional development, loss of benefits
(including back and front pay), loss of increase in salary, and loss of potential promotions
entitling her to damages, compensatory damages from emotional pain and suffering,
inconvenience, mental anguish, loss of enjoyment of life, aggravation of condition, punitive
damages, attorney fees and costs.

## COUNT 5

## PUNITIVE DAMAGES

85.     Plaintiff incorporates by reference paragraphs 1-84 as though fully set forth
herein.

86.     Defendant's conduct as set forth above constitutes egregious, outrageous and
wanton conduct.

87.     Defendant's conduct as set forth above was intentional and willful.

Date:07/11/2012                          s/Geoffrey S. McInroy
                                         Geoffrey S. McInroy, Esquire
                                         I.D. No. 87876
                                         Owens Barcavage & McInroy, LLC

13

2595 Interstate Drive, Suite 101
Harrisburg, PA  17110
(717) 909-2500

14

## <u>VERIFICATION</u>

I, Janet Costella, certify under penalty of 18 Pa.C.S. § 4904, related to Unsworn Falsification to Authorities, that the averments of fact in the foregoing Complaint are true and correct upon my personal knowledge, or information and belief.

Date: _7/11/12_

_Janet Costella_
Janet Costella